**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| *In re:* § | | |
| § | | |
| **DUAL D HEALTH CARE** § | | |
| **OPERATIONS, INC. d/b/a KEMP** § | **CASE NO. 17-41320-elm** | |
| **CARE CENTER, LLC.** § | | |
| § | | |
| *Debtor.* § | | |

| | | |
|---|---|---|
| **SHAWN K. BROWN, Chapter 7** § | | |
| **Trustee for Dual D Health Care Operations,** § | | |
| **Inc. d/b/a Kemp Care Center, LLC,** § | | |
| § | | |
| Plaintiff, § | | |
| v. § | **ADVERSARY NO. 20-04059** | |
| § | | |
| **LLOYD DOUGLAS, Individually,** *et al.,* § | | |
| § | | |
| Defendants. § | | |

| | | |
|---|---|---|
| *In re:* § | | |
| § | | |
| **SPECIALTY SELECT CARE CENTER** § | | |
| **OF SAN ANTONIO, LLC** § | **CASE NO. 17-44248-elm-7** | |
| § | | |
| *Debtor,* § | | |

| | | |
|---|---|---|
| **SHAWN K. BROWN, Chapter 7** § | | |
| **Trustee for Specialty Select Care Center** § | | |
| **of San Antonio, LLC,** § | | |
| § | | |
| **Plaintiff,** § | | |
| v. § | **ADVERSARY NO. 20-04060** | |
| § | | |
| **LLOYD DOUGLAS, Individually, et al.,** § | | |
| § | | |
| Defendants. § | | |

**TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO PARTIALLY
<u>EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG</u>**

**TABLE OF CONTENTS**

                                                          **PAGE**

I. DEFENDANTS SEEK TO EXCLUDE TESTIMONY OF JERRY M. CHANG ............. 1

II. TRUSTEE AGREES WITH THE DEFENDANTS' "CONCLUSION" OF WHAT *DAUBERT* REALLY MEANS AND WHAT EXPERTS CAN AND DO RELY ON............................................................................................................................ 1

III. FACE VS. FAIR AND UTILIZATION OF THE "STEVENS ARTICLE" AS ONE OF THE FACTORS IN ARRIVING AT A VALUE ................................................. 3

IV. MR. CHANG'S REBUTTAL REPORT REBUTS THE REPORT OF THE DEFENDANTS' EXPERT, MR. BAUMGARTNER .......................................................... 6

V. CROSS-EXAMINATION VS. DISQUALIFICATION ...................................................... 7

VI. CONCLUSION AND PRAYER................................................................................................ 7

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc*. 509 U.S. 579, 589 (1993) ................................................... 1

*U.S. v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971) ................................................................. 2

COMES NOW Plaintiff, Shawn K. Brown ("**Plaintiff**" or "**Trustee**"), Chapter 7 Trustee of the Dual D. Healthcare Operations, Inc. d/b/a Kemp Care Center, LLC ("**Dual D**") and Specialty Select Care Center of San Antonio, LLC Bankruptcy Estates ("**Specialty Select**") (collectively, the "**Debtors**"),[1] and files this Response to Defendants' Motion to Partially Exclude Expert Testimony of Jerry M. Chang ("**Motion**"), and respectfully shows the Court the following:

## I.
## DEFENDANTS SEEK TO EXCLUDE TESTIMONY OF JERRY M. CHANG

1. Jerry M. Chang was duly disclosed by the Trustee as the valuation and solvency expert for the Debtors.

2. Defendants' Motion to Partially Exclude Expert Testimony of Jerry M. Chang seems to attempt to limit Mr. Chang's testimony to only the valuation of the Debtors prior to the transfer that rendered them insolvent.

3. The Motion is not well taken and should be denied.

## II.
## TRUSTEE AGREES WITH THE DEFENDANTS' "CONCLUSION" OF WHAT *DAUBERT* REALLY MEANS AND WHAT EXPERTS CAN AND DO RELY ON

4. After a lengthy discussion of the case law relating to *Daubert*, the Motion provides two statements with which the Trustee agrees:

    a. In paragraph 22, the Defendants state, "At its core, *Daubert* requires that any expert testimony be 'relevant and reliable.' *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993)."

    b. In paragraph 52 of Defendants' Brief in Support of its Motion to Partially Exclude Expert Testimony of Jerry M. Chang ("**Brief**"), the Defendants have the following statement of law:

> Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony. It has long been the rule of evidence in the

---

[1] While there are two separate estates, the Adversaries filed by the Trustee in behalf of each Estate are virtually identical and will be tried in a joint trial (but the Estates are not consolidated). Consequently, the Trustee will only file this Motion once in behalf of both Debtors, which will require only one Response.

**TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO PARTIALLY**     **PAGE 1**
**EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG**
470456

> federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources. The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion. Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.

*U.S. v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971).

5. Mr. Chang's opinions are relevant and reliable, and are based upon the types of information that experts routinely rely upon.[2]

6. Defendants state three grounds for why Mr. Chang's opinions should be excluded. None of those grounds are valid.

7. After a scholarly and very long discussion of "face value" and "fair value," which were probably much more to the point in another case, the Defendants posit:

    a. Mr. Chang's opinions on solvency should be ignored because "face value" instead of "fair value" was used in his analysis;

    b. Mr. Chang's opinion on solvency should not be considered because he relied "solely" on an outside report(the "Stevenson Report") to value tort claims; and

    c. Mr. Chang's opinion on solvency contained in his rebuttal report should be ignored because it depends on a valuation of the tort claims, and there was nothing to rebut about the tort claims in the Defendants' expert's report.[3]

---

[2] The Defendants' expert Mr. Baumgartner used outside sources much more for the basis of his report than Mr. Chang did.
[3] A copy of his Defendants' Expert's report and his rebuttal report are attached hereto as **Exhibits A and B**.

**TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO PARTIALLY**     **PAGE 2**
**EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG**
470456

# III.
## FACE VS. FAIR AND UTILIZATION OF THE "STEVENS ARTICLE" AS ONE OF THE FACTORS IN ARRIVING AT A VALUE

8. In paragraph 37 of Defendants' Brief, the Defendants justify their 16-page (although admittedly legally erudite) discussion of "face value vs. fair value" by stating "Mr. Chang, by simply taking the wrongful death claims at face value" has nothing to offer to the Court in the way of assistance and engages in the wrong methodology.

9. In fact, even a cursory review of Mr. Chang's report indicates that he did no such thing. Mr. Chang did not simply use the face value of the claims.

10. Without engaging in a discussion of when face value can and should be used as opposed to some other value, here is how Mr. Chang reached his number of $200,000 per claim.

11. He did find, read, and study what is referred to as the Stevenson Report,[4] which is the seminal report about valuing claims arising out of assisted living facilities in Texas.

12. Mr. Chang, as a Certified Financial Analyst and valuation expert, understandably relies on outside studies for many things, as do others in the same field. This is not only permissible, but expected under Federal Rule of Evidence 703. He used numbers from the Stevenson Report and adjusted them for economic factors, such as inflation, to bring them in line with a monetary 2015 value. Again, a perfectly acceptable methodology. That, however, was only the beginning of his process.

13. He considered other sources in arriving at a number of around $200,000 per claim (a number different and smaller than the "Stevenson" number). He tested his number and (in Mr.

---

[4] The Stevenson Report is a 2006 paper authored by David Stevenson, et. al, titled *The Nursing Home Liability Insurance Market: A Case Study of Texas*.

Chang's own words) the validity of not only his methodology, but also the Stevenson Report, and the other known data points:

    A.    The "Stevenson Report" criticized by Defendants was prepared under an official contract between the U.S. Department of Health and Human Services (HHS), the Office of Disability, Aging and Long-Term Care Policy (DALTCP) and a company called Medstat.[5]

    B.    When conducting a valuation, it is important first to find a credible source, and given that the "Stevenson Report" was commissioned by the HHS, a government agency, such reports can generally be considered to be credible reports. The article was and is still posted to the HHS website. The U.S. Department of Health and Human Services is a credible source and posts and uses information like the "Stevenson Report" in its work. No one criticizes use of the United States Census data and statistics in work like I perform, and it is a compilation of data from many outside sources. The Stevenson Report used many of the same methods and is credible.[6]

    C.    The article was relevant and comparable because the study was of nursing homes in Texas. It had data points in the article – qualitative and quantitative – about the value of claims in Texas being among the highest in the nation, with the average being in the $300,000-500,000 range, before tort reform went into effect.[7]

    D.    In that study, the six-year average was $215,833 per claim when adjusted for inflation by standard means. I was aware of and compared that with the cap of $250,000 that existed after tort reform, exclusive of actual medical expenses.[8]

    E.    I also reviewed the AON study (which was a national study, not just Texas, conducted by AON Insurance Company) to test for the reasonableness of my calculation. AON had an average of $212,000 per claim, which further corroborated my $200,000 value per wrongful death claim.[9]

    F.    These are some of the different data points a valuation experts would use to test their valuation. There were other data points I also considered. The claims, as filed in the bankruptcy, were for $250,000 each plus medical costs. The Defendants had already accepted and the Defendants' expert had used in his report a number of $190,000 per claim for the claims filed against Specialty Select's sister company, Dual D. My $200,000 per claim number was only

---

[5] *See* paragraph A on p. 3 of Declaration of Jerry M. Chang, attached as **Exhibit C** hereto.
[6] *See* paragraph B on p. 3 of Declaration of Jerry M. Chang.
[7] *See* paragraph C on p. 4 of Declaration of Jerry M. Chang.
[8] *See* paragraph D on p. 4 of Declaration of Jerry M. Chang.
[9] *See* paragraph E on p. 4 of Declaration of Jerry M. Chang.

      G.    slightly higher than the $190,000 figure accepted by the Defendants' and was below the claims-as-filed number, the HHS number, and the AON number.[10]

      G.    The outside studies I used and my methodology are common and well-accepted practices utilized by experts in general and by me in my work on a daily basis. They are accepted in and are the way this industry has worked for years.[11]

Thus arriving at a number of $200,000 per claim was mathematically symmetrical (see chart immediately below) with the other known data points and the value per claim that had been accepted by the Defendants and their expert of $190,000 per claim at Dual D being only $10,000 less than Mr. Chang's number.

| | |
|---|---|
| 1. Cap on Recoveries for Wrongful Death (excluding actual medical) | $250,000 |
| 2. Tort Claimants' Claims at Face Value | $250,000 plus actual medical |
| 3. Stevenson Report (6-year average adjusted for inflation by standard means) | $215,833 |
| 4. AON Study | $212,000 |
| 5. Mr. Chang's Valuation | **$200,000** |
| 6. Claims in Specialty Select's Sister Company, Dual D (accepted by Defendants and used by Defendants' Expert in his report) | $190,000 |

14.    There was no "face value" used by Mr. Chang in any of his calculations or his report, and the value that he arrived at was calculated based on good information and data points of the type used by all experts in their work.

---

[10] *See* paragraph F on p. 4 of Declaration of Jerry M. Chang.
[11] *See* paragraph G on p. 4 of Declaration of Jerry M. Chang.

## IV.
## MR. CHANG'S REBUTTAL REPORT REBUTS THE REPORT OF THE DEFENDANTS' EXPERT, MR. BAUMGARTNER

15. Defendants make the curious argument that Mr. Chang cannot file a rebuttal report that has an opinion in it about the value of the wrongful death claims against Specialty Select, since there is nothing in Defendants' expert Mr. Baumgartner's report to rebut.

16. Mr. Baumgartner, in his report, found a zero value for these ten wrongful death claims, so any value that Mr. Chang gave to those same claims rebuts that. The semantics gymnastics that the Defendants want to engage in that their expert has "not included any amount" does not mean zero, or cannot be rebutted is just that, semantics gymnastics.

17. Not including any amount gives a zero value to the wrongful claims in Mr. Baumgartner's calculation. Moreover, Mr. Baumgartner's "I have not included any amount" can be rebutted by Mr. Chang by his saying that he has included an amount, or Mr. Baumgartner's statement, "I cannot put a value on it" can be rebutted by Mr. Chang by his saying "I can – here is how you do it."

18. This is all entirely proper rebuttal.

19. These semantics gymnastics sometimes confuse even the Defendants, as evidenced by the following question from Defendants' counsel in Mr. Chang's deposition:

**Defendants' Counsel:**

```
19        Q.  Well, Mr. Baumgartner of Specialty Select
20    assigns a zero value to those 10 claims because, as he
21    said yesterday, he has no idea what they're worth,
22    right? (emphasis supplied)
```

…

Mr. Chang:

```
 4        A.  Because those claims were still outstanding,
 5   and therefore, I don't think you can just ignore it
 6   like Mr. Baumgartner did.
```

See **Exhibit D**, Dkt. 77-6, *Transcript of Deposition of Jerry M. Chang*, p. 26, ll. 19-22 and p. 27, ll. 4-6.

## V.
## CROSS-EXAMINATION VS. DISQUALIFICATION

20.   It seems the points raised by the Defendants, if they have any validity, might have some value in cross-examination, but certainly they do not rise to the level of disqualification of Mr. Chang, who has spent a quarter of a century valuing businesses of all types. He is qualified and his report is relevant and reliable and his sources and methodology well vetted.

21.   The Trustee could have filed a *Daubert* against the Defendants' expert, Mr. Baumgartner,[12] over many points, but believes those are also more appropriate for cross-examination than taking up the Court's time in a *Daubert* disqualification hearing.

## VI.
## CONCLUSION AND PRAYER

In conclusion: Mr. Chang did not use "face value"; he did not rely solely on one outside source (as did Defendants' own Expert); Mr. Chang's valuation of the tort claims is relevant and reliable; and Defendants' Expert found zero or no value for the tort claims, which is clearly rebuttable.

WHEREFORE, premises considered, the Trustee respectfully requests that Defendants' Motion to Partially Exclude Expert Testimony of Jerry M. Chang be denied.

---

[12] For example, Mr. Baumgartner quoted, paraphrased, or cited Pratt, "*Valuing a Business – The Analysis and Appraisal of Closely Held Companies*" 13 times in a 21-page report.

Respectfully submitted,

By: /s/ Jerry C. Alexander                    /s/ Joseph F. Postnikoff
    Jerry C. Alexander                         Joseph F. Postnikoff
    Texas Bar No. 00993500                     Texas Bar No. 16168320
    **PASSMAN & JONES, P.C.**                  **ROCHELLE MCCULLOUGH, LLP**
    1201 Elm Street, Suite 2500                300 Throckmorton Street, Suite 520
    Dallas, Texas 75270-2599                   Fort Worth, Texas  76102
    Tel: (214) 742-2121                        Tel: (817) 347-5260
    alexanderj@passmanjones.com                jpostnikoff@romclaw.com
*Special Litigation Counsel for Shawn K. Brown, Chapter 7 Trustee*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of March 2024, a true and correct copy of the foregoing was served on counsel of record via e-mail.

                                                              /s/ Jerry C. Alexander
                                                              Jerry C. Alexander