Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500

ATTORNEYS FOR THE DEFENDANTS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| In re <br><br> DUAL D HEALTH CARE OPERATIONS, INC. d/b/a KEMP CARE CENTER, LLC, <br><br>    Debtor. | § § § § § § § § | Case No. 17-41320-elm-7 |
| In re <br><br> SPECIALTY SELECT CARE CENTER OF SAN ANTONIO, LLC, <br><br>    Debtor. | § § § § § § § § | Case No. 17-44248-elm-7 |
| SHAWN K. BROWN, TRUSTEE, <br><br>    Plaintiff, <br><br> v. <br><br> LLOYD DOUGLAS, *et. al.*, <br><br>    Defendants. | § § § § § § § § § § § | Adv. No. 20-04059-elm |
| SHAWN K. BROWN, TRUSTEE, <br><br>    Plaintiff, <br><br> v. <br><br> LLOYD DOUGLAS, *et. al.*, <br><br>    Defendants. | § § § § § § § § § § § | Adv. No. 20-04060-elm |

DEFENDANTS' RESPONSE TO MOTION TO STRIKE MICHAEL CRAIG KELLY AS A NON-COMPENSATED, NON-RETAINED EXPERT—Page 1

## DEFENDANTS' RESPONSE TO MOTION TO STRIKE MICHAEL CRAIG KELLY AS A NON-COMPENSATED, NON-RETAINED EXPERT

TO THE HONORABLE EDWARD L. MORRIS, U.S. BANKRUPTCY JUDGE:

COME NOW Lloyd Douglas, Lloyd Douglas Enterprises, L.C., Brownwood Care Center I, Ltd., D-5 Development, LLC, Sunflower Park Holdings, LP, Whispering Pines Healthcare, L.C., Mt. Pleasant Operators, LLC, Specialty Select Care Center, LLC, Graham Investors Group, LLC, Kemp Investor Holdings, LLC, Kerens Care Center, Inc., and River City Life Care, Inc. (collectively, the "Defendants"),[1] the defendants in the two (2) Adversary Proceedings styled and numbered above, and file this their *Response* to the *Trustee's Motion to Strike Michael Craig Kelly as a Non-Compensated, Non Retained Expert* (the "Motion"), filed by Shawn K. Brown (the "Trustee"), the plaintiff in both of these Adversary Proceedings, respectfully stating as follows:

1. The Motion represents a misunderstanding by the Trustee.

2. The Trustee is correct that, almost two years ago, the Defendants listed Michael Craig Kelly as a witness, in their initial disclosures, who may have knowledge regarding the "lack of value of the debtor and its assets."

3. The Defendants agree that Mr. Kelly lacks such knowledge and expertise and, to that extent, they do not intend to offer his testimony. Thus, and again to that extent, the Defendants do not oppose the granting of the Motion, although this is unnecessary.

4. However, what the Trustee does not address is the Defendants' *expert disclosures*, timely transmitted on December 8, 2023, that designated Mr. Kelly as an unretained expert pursuant to Rule 26(a)(2)(C), as follows:

---

[1] Various of the Defendants have been dissolved, terminated, or cancelled. They appear herein in a limited matter and to a limited extent under protest, and only to the extent that they have any existence left for the purpose of defending against claims. In no way are they reconstituting themselves or waiving any issue or right by defending the Complaint. They reserve all rights regarding the same.

---

DEFENDANTS' RESPONSE TO MOTION TO STRIKE MICHAEL CRAIG KELLY AS A NON-COMPENSATED, NON-RETAINED EXPERT—Page 2

    Pursuant to Rule 26(a)(2)(C), the defendants disclose that Michael Craig Kelly is expected to provide expert testimony, without compensation. Mr. Kelly was the broker for the transaction and has extensive experience with the nursing home industry, being the preeminent broker in this market. He is a licensed real estate broker. His expert opinions are based on his experience in the industry.

    In addition to his factual testimony based on his personal knowledge of the transaction, Mr. Kelly is expected to testify as to the following, which may be in the nature of expert testimony: (i) that the manner in which the defendants were created and operated is standard in the industry; (ii) that the management agreements and related fees are standard in the industry; (iii) that any reasonable buyer would require the termination of the leases and management agreements, as is standard in the industry; (iv) that any reasonable buyer would be purchasing, and paying for, the real property and would use its own operator (i.e. it would not be buying the operator), as is standard in the industry, but no reasonable buyer would be buying the land subject to a lease, and hence that the value of the transaction was with the land and not the operations; (v) that everything about the transaction, including pricing and allocation of price, was standard and ordinary in the industry and nothing about it was unusual or had any cause for suspicion of fraudulent or other motives; (vi) that the price paid by the buyer was very high for the market because the buyer was flush with cash that it needed to invest; and (vii) that no reasonable buyer would buy an operator facing multiple wrongful death lawsuits, which destroyed the value of the operator and the business.

*See* Exhibit "A" attached hereto as incorporated herein.

    5.    The evidence will demonstrate that Mr. Kelly is the premier *national* broker for nursing home sales, that he has been a licensed real estate broker and agent for forty-six (46) years, and that he has brokered billions of dollars in nursing home sales, including by negotiating the pricing, and that, as part of his job and expertise, he knows what a reasonably prudent buyer of nursing home facilities *vis a vis* nursing home operations wants and is looking for. And, Mr. Kelly was the broker in this transaction, with personal knowledge as well as expert knowledge.

    6.    But, there is no need to determine Mr. Kelly's qualifications at this time, and all issues related thereto can be preserved at trial, because the Trustee does not seek any relief with respect to the above topics on which Mr. Kelly is expected to testify, and on which the Trustee apparently did not depose Mr. Kelly.

7. At best, the Motion implicates Mr. Kelly's expected testimony that "everything about the transaction, including pricing and allocation of price, was standard and ordinary . . ." Yet the Trustee did not ask Mr. Kelly about these issues. The Trustee did ask Mr. Kelly about price allocation, which he admitted he did not do and does not do, but the Trustee did not ask Mr. Kelly about whether the buyer here—both on personal knowledge and on industry standards—should or would have paid anything for the minor, nominal assets that were transferred here. Mr. Kelly's testimony is expected to be that the buyer paid, and any reasonably prudent buyer would have paid, nothing for those miniscule assets, because the sale here was of the facilities and not the operations. Thus, any prudent seller would have been expected to throw into the sale what minor assets the debtors had, and any prudent buyer would have expected the same, for no additional price, because those assets were worthless to the seller upon the sale of the land and related facilities.

8. The foregoing is not an expert valuation, but rather a discussion of the realities, facts, and circumstances regarding this transaction and similar transactions, on which Mr. Kelly is qualified to testify both based on his personal knowledge and his forty-six (46) years in the business. This is credible and relevant evidence that will be offered to refute the Trustee's allegation of actual fraudulent transfer; *i.e.* that the Defendants structured the sale as they did in order to prevent the debtors' tort creditors from being paid. And, the Court cannot meaningfully address this evidence and its admissibility until the Court sees the true nature of the transaction which was not, as the Trustee contends, a transfer of the debtors' operations or going concern, but rather was a land sale where the debtors did not own the land, improvements, or the FF&E.

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request that, to the extent the Court grants the Motion, Mr. Kelly be excluded from testifying only as to any opinion of what the value of the debtors and their assets was.

RESPECTFULLY SUBMITTED this 13th day of March, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    drukavina@munsch.com

**ATTORNEYS FOR THE DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 13th day of March, 2024, true and correct copies of this motion and the exhibit thereto were electronically served by the Court's ECF system on all parties to this Adversary Proceeding through their counsel of record, including on counsel for the Trustee.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| In re § § § DUAL D HEALTH CARE OPERATIONS, § INC. d/b/a KEMP CARE CENTER, LLC, § § Debtor. § | | Case No. 17-41320-elm-7 |
| In re § § § SPECIALTY SELECT CARE CENTER § OF SAN ANTONIO, LLC, § § Debtor. § | | Case No. 17-44248-elm-7 |
| SHAWN K. BROWN, TRUSTEE, § § Plaintiff, § § v. § § LLOYD DOUGLAS, *et. al.*, § § Defendants. § | | Adv. No. 20-04059-elm |
| SHAWN K. BROWN, TRUSTEE, § § Plaintiff, § § v. § § LLOYD DOUGLAS, *et. al.*, § § Defendants. § | | Adv. No. 20-04060-elm |

## **DECLARATION OF DAVOR RUKAVINA**

I, Davor Rukavina, hereby declare the following and hereby certify, under penalty of perjury pursuant to the laws of the United States and the State of Texas, that it is true and correct to the best of my knowledge and belief:

1. "My name is Davor Rukavina, I am over the age of 18 years, and am competent and otherwise qualified to make this Declaration. I have personal knowledge of the matters stated herein and they are all true and correct to the best of my knowledge.

2. I am an attorney duly licensed to practice law in the State of Texas and before this Court, among other courts.

3. I am lead counsel for Lloyd Douglas, Lloyd Douglas Enterprises, L.C., Brownwood Care Center I, Ltd., D-5 Development, LLC, Sunflower Park Holdings, LP, Whispering Pines Healthcare, L.C., Mt. Pleasant Operators, LLC, Specialty Select Care Center, LLC, Graham Investors Group, LLC, Kemp Investor Holdings, LLC, Kerens Care Center, Inc., and River City Life Care, Inc. (collectively, the "Defendants"),[1] the defendants in each of the two Adversary Proceedings identified above.

4. I am submitting this Declaration in connection with the *Defendants' Response* to the *Trustee's Motion to Strike Michael Craig Kelly as a Non-Compensated, Non Retained Expert*.

5. Attached to this Declaration is a true and correct copy of the Defendants' *Disclosure of Expert Testimony*, served by me on counsel for the plaintiff in these adversary proceedings on December 8, 2023, which was timely given that all parties agreed to extend the expert disclosure deadline through that day.

6.

7.

---

[1] Various of the Defendants have been dissolved, terminated, or cancelled. They appear herein in a limited matter and to a limited extent under protest, and only to the extent that they have any existence left for the purpose of defending against claims. In no way are they reconstituting themselves or waiving any issue or right by defending the Complaint. They reserve all rights regarding the same.

DECLARATION OF DAVOR RUKAVINA – Page 2

DECLARED under penalty of perjury this 13th day of March, 2024.

    /s/ Davor Rukavina
Davor Rukavina



Ross Tower
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214.855.7587
Direct Fax 214.978.5359
drukavina@munsch.com

December 8, 2023

**DISCLOSURE OF EXPERT TESTIMONY**

BY E-MAIL ONLY

Joseph F. Postnikoff, Esq.
Rochelle McCullough, LLP
300 Throckmorton St., Suite 520
Fort Worth, Texas 76102

    Re:    Adversary Proceeding Nos. 20-04059 & 20-04060; Brown v. Douglas, et. al.

Dear Joe:

This letter, its attachment, and the links to be provided will complete all defendants' expert disclosures in both adversary proceedings, reserving their right to provide rebuttal disclosures.

**Retained Expert**

Pursuant to Rule 26(a)(2)(B), attached hereto is the expert report and other disclosures of John D. Baumgartner, the defendant' retained expert for the purposes described in his report.

This letter will be followed by two e-mails. One will attach a file transfer site for John's exhibits to the report. Please let me know if you do not receive this. The second will be the QuickBooks files, to the extent you do not already have them (which I believe you do). Please also let me know if you do not receive this one. I anticipate both will be sent moments after this letter, but downloading the QuickBooks files may require some coordination, which I am willing to help with if requested.

**Unretained Experts**

Pursuant to Rule 26(a)(2)(C), the defendants disclose that Michael Craig Kelly is expected to provide expert testimony, without compensation. Mr. Kelly was the broker for the transaction and has extensive experience with the nursing home industry, being the preeminent broker in this market. He is a licensed real estate broker. His expert opinions are based on his experience in the industry.

In addition to his factual testimony based on his personal knowledge of the transaction, Mr. Kelly is expected to testify as to the following, which may be in the nature of expert testimony: (i) that the manner in which the defendants were created and operated is standard in the industry; (ii) that the management agreements and related fees are standard in the industry; (iii) that any reasonable buyer would require the termination of the leases and management agreements, as is standard in the industry; (iv) that any reasonable buyer would be purchasing, and paying for, the real property and would use its own operator (*i.e.* it would not be buying the operator), as is standard in the industry, but no reasonable buyer would be buying the land subject to a lease, and hence that the value of the transaction was with the land and not the operations; (v) that everything about the transaction, including pricing and allocation

Joseph F. Postnikoff, Esq.
December 8, 2023
Page 2

of price, was standard and ordinary in the industry and nothing about it was unusual or had any cause for suspicion of fraudulent or other motives; (vi) that the price paid by the buyer was very high for the market because the buyer was flush with cash that it needed to invest; and (vii) that no reasonable buyer would buy an operator facing multiple wrongful death lawsuits, which destroyed the value of the operator and the business.

Mr. Kelly is not being compensated in any way (except standard witness subpoena fees and expenses), has no interest in this litigation, and has no interest in any of the defendants, past or present. Mr. Kelly is available for deposition during expert discovery. You may contact me to arrange for the same.

**Lloyd Douglas**

Mr. Douglas is obviously a party and has personal knowledge of most if not all issues in these adversary proceedings. Mr. Douglas is expected to testify as to the following, which may be in the nature of expert opinion, based on his extensive personal knowledge in the industry and previous nursing home litigation: (i) that the manner in which the defendants were set up is standard and ordinary in the industry, as were the management fees; (ii) that the defendants were solvent and not rendered insolvent by the transaction; (iii) that everything about the sale was standard and ordinary in the industry; (iv) that the value of the wrongful death lawsuits was minimal, and in each case far less than $250,000, because the claims were fabricated with respect to any liability of the defendants, and would have been settled for a fraction of their asserted values, as these cases do not go to trial and are settled; (v) that the insurance carriers and limits were standard and ordinary in the industry; (vi) that the wrongful death lawsuits were a setup by a crooked law firm engaging in barratry, because of the extremely small chance of it being anything other than a setup, and that the same law firm, together with the local news stations, had done this to other operators and destroyed them as going concerns; and (vii) that the lawsuits destroyed the value of the operators and that of their good will.

Sincerely,

/s/ Davor Rukavina
Davor Rukavina, Esq.

DR:

Cc:    Jerry Alexander, Esq. [by e-mail]