Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500

ATTORNEYS FOR THE DEFENDANTS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| In re<br><br>DUAL D HEALTH CARE OPERATIONS, INC. d/b/a KEMP CARE CENTER, LLC,<br><br>Debtor. | § § § § § § § § | Case No. 17-41320-elm-7 |
| In re<br><br>SPECIALTY SELECT CARE CENTER OF SAN ANTONIO, LLC,<br><br>Debtor. | § § § § § § § § § | Case No. 17-44248-elm-7 |
| SHAWN K. BROWN, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD DOUGLAS, *et. al.*,<br><br>Defendants. | § § § § § § § § § § § § | Adv. No. 20-04059-elm |
| SHAWN K. BROWN, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD DOUGLAS, *et. al.*,<br><br>Defendants. | § § § § § § § § § § § § | Adv. No. 20-04060-elm |

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG—Page 1

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG**

TO THE HONORABLE EDWARD L. MORRIS, U.S. BANKRUPTCY JUDGE:

COME NOW Lloyd Douglas, Lloyd Douglas Enterprises, L.C., Brownwood Care Center I, Ltd., D-5 Development, LLC, Sunflower Park Holdings, LP, Whispering Pines Healthcare, L.C., Mt. Pleasant Operators, LLC, Specialty Select Care Center, LLC, Graham Investors Group, LLC, Kemp Investor Holdings, LLC, Kerens Care Center, Inc., and River City Life Care, Inc. (collectively, the "Defendants"),[1] the defendants in the two (2) Adversary Proceedings styled and numbered above, and file this their *Reply* to the *Trustee's Response to Defendants' Motion to Partially Exclude Expert Testimony of Jerry M. Chang* (the "Response"), filed by Shawn K. Brown (the "Trustee"), the plaintiff in these Adversary Proceedings, in response to the *Defendants' Motion to Partially Exclude Expert Testimony of Jerry M. Chang* (the "Motion"), respectfully stating as follows:

**I.    SUMMARY**

1.    By the Motion, the Defendants seek to exclude, under *Daubert* principles and the Rules of Evidence, testimony from Mr. Chang: (i) purporting to value the tort claims filed against the Debtors; and (ii) opining that the Debtors were insolvent as a result of those claims. On the first point, the Defendants seek relief because Mr. Chang's purported valuation of the tort claims is not proper rebuttal testimony, because Mr. Chang is not an expert on the topic, because Mr. Chang did not apply any proper methodology to the task, and because Mr. Chang's reliance on a sole article for his opinion of value of the tort claims is not permissible or reliable, thus rendering

---

[1] Various of the Defendants have been dissolved, terminated, or cancelled. They appear herein in a limited matter and to a limited extent under protest, and only to the extent that they have any existence left for the purpose of defending against claims. In no way are they reconstituting themselves or waiving any issue or right by defending the Complaint. They reserve all rights regarding the same.

him merely a conduit for hearsay. On the second point, Mr. Chang simply uses the tort claims at face value (or, later, at his inadmissible value of $200,000 each) to conclude that the Debtors were insolvent, which is not permitted by the applicable law of fraudulent transfer or preference.

2. The Trustee responds by arguing that Mr. Chang's opinion is proper rebuttal because Mr. Baumgartner stated that he cannot estimate the value of the tort claims; not that he did estimate them at zero. This is sophistry. If Mr. Chang had an opinion on the value of the tort claims—an obvious and critical issue on which the Trustee bears the burden of proof—then the time to give that opinion was in his Original Reports. But he did not, instead taking the tort claims at face value, which the law does not permit.

3. On the substantive issue of whether Mr. Chang is qualified to give that opinion, he presents the Court with a "sham affidavit" directly contradicting his deposition testimony, now going so far to as to state that he *did* review an AON report that he said at his deposition he did not know existed. Even so, as a peasant in 1,600 would conclude that there must be a God because the dome of St. Peter's Basilica stands, not knowing of the engineering and construction science involved, so Mr. Chang, not being an expert on valuing personal injury and wrongful death claims, can do no more than repeat as truth the information in the Stevenson Report. It is not *his* opinion or *his* research, but that of another, that does not inform his opinion but rather *is* his opinion, which means that he is nothing more than a conduit for inadmissible hearsay.

4. The Court should see through the Trustee's attempts to engineer a way to fix what he has missed: that the tort claims cannot be taken at face value and that he has failed to prepare any admissible evidence of their fair value. If, however, the Court is inclined to permit Mr. Chang to testify as to that value, then the Defendants must seek a continuance to take discovery regarding the tort claims and to retain an expert on that issue.

## II. REPLY

### A. MR. CHANG'S OPINION IS NOT PROPER REBUTTAL

5. First, the Trustee appears to argue that Mr. Chang's original report *did* include a valuation of the tort claims: "[t]here was no 'face value' used by Mr. Chang in any of his calculations or his report, and the value that he arrived at was calculated based on good information and data points of the type used by all experts in their work." Response at ¶ 14. This simply is not correct with respect to his Original Reports.

6. Most obviously, his Original Reports contain no purported valuation of the tort claims. *See* DAPP 5; DAPP 24; DAPP 77; DAPP 97. He confirmed at his deposition that they did not, as the first purported valuation was done in the context of his Rebuttal Report. *See* DAPP 342:18-343:8. Next, if more proof was needed, Mr. Chang fails to reference the Stevenson Report among the many sources of information he used in preparing his Original Reports. *See* DAPP 26-28; DAPP 99-100. Surely, if Mr. Chang had originally opined on the value of the tort claims, he would have referenced the sole source for his opinion in his Original Reports. And, perhaps most disturbingly, Mr. Chang now attempts to change his sworn deposition testimony in the form of a new declaration (*see* discussion below on "sham affidavit").

7. The inescapable conclusion is that valuing the tort claims formed no part of Mr. Chang's Original Reports, his original analysis, or his original opinion. The only way that his opinion could now be offered is as rebuttal to Mr. Baumgartner's opinions. In this respect, the Trustee makes the following wrong and circular argument: "Mr. Baumgartner, in his report, found a zero value for these ten wrongful death claims, so any value that Mr. Chang gave to those same claims rebuts that. The semantics gymnastics that the Defendants want to engage in that their expert has "not included any amount" does not mean zero, or cannot be rebutted is just that, semantics gymnastics." Response at ¶ 16.

8. This might be true, *if* Mr. Baumgartner valued the tort claims at zero. He did not. As the Motion and Mr. Baumgartner make clear, Mr. Baumgartner simply stated that "I am not able to estimate the value of the claims." DAPP 159. "I am not able to" is far different from "the claims are worth zero." And, the Trustee's argument that rebutting the "I am not able to" with "well, I am" is truly remarkable: if Mr. Chang was able to value the tort claims, then he had that chance in his Original Reports, and then the Defendants would have retained a rebuttal expert who could value the claims. Rebutting "I am not able to" with "I am" is not rebuttal or, if it is, it is a personal matter of the witnesses' qualifications and not as to their opinions.

9. The Trustee also incorrectly states that the "Defendants had already accepted and the Defendants' expert had used in his report a number of $190,000 per claim for the claims filed against Specialty Select's sister company, Dual D." Response at ¶ 13.F. Mr. Baumgartner did not say that either, and the Defendants certainly have not accepted any such number. Rather, in the Dual D case, the Trustee sought and obtained a Rule 9019 settlement of those two tort claims at $190,000.00 each. All that Mr. Baumgartner did was to reference this fact, for illustrative purposes, to note that Dual D was solvent even if this number is used in an insolvency analysis. *See* DAPP 182. He did not opine on it and, as he flatly says, he is unable to place any estimate on the value of the tort claims.[2] It is also rather nonsensical for Mr. Chang to try to rebut this amount, which was the very amount agreed to by his client.

10. The sequence at trial proves the Defendants' point. If the Trustee's argument is to be believed, then he will call Mr. Chang on direct, and Mr. Chang will be limited to what is in his

---

[2] To reiterate, the Defendants do not agree that those claims are properly valued at $190,000.00. The Trustee's settlement was just that: *his* settlement, that is not binding on the Defendants. The Defendants will brief this point in their trial brief and reserve all rights with respect to the same. Moreover, the Trustee casually omits Mr. Baumgartner's deposition, where he flatly states as much, but which is not included now in the appendix because the Defendants honor the rule that additional evidence should not be submitted with a reply.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG—Page 5

Original Reports. The Defendants will then move for a directed verdict on the issue of insolvency which, because the Trustee will have no evidence of the value of the tort claims, the Court should grant. Mr. Baumgartner will then not testify, there will be nothing from him to rebut, and Mr. Chang's opinion of the value of the tort claims will not be even offered, much less admitted.

11. The truth is simple and transparent, even if unfortunate: the Trustee failed to appreciate until this very late date that he bore the burden of proof on valuing the tort claims at something less than face value. Only when he realized this, after all discovery and expert disclosures were concluded, does he now try to use Mr. Chang and rebuttal to correct that omission. The problem of course is not only the Court's scheduling order and the rules of procedure, but that this is highly, highly prejudicial to the Defendants, who do not have to put on any evidence of solvency unless and until the Trustee first presents admissible evidence of insolvency.

12. The Defendants stress that this is not gamesmanship. Had the Trustee timely designated an expert to value the tort claims, the Defendants would have had the opportunity to designate a rebuttal expert on this issue. It is now too late. And, their discovery would have included discovery concerning the underlying tort claims, which they did not do because the Trustee—with the burden of proof on insolvency—did not trigger the process or give any fair warning that he might.[3] The Defendants thus find themselves forced to seek a continuance, if the Court is inclined to permit Mr. Chang's testimony, in order to take discovery regarding the underlying tort claims and to designate an expert on the issue.

13. The Court should therefore grant the Motion because Mr. Chang's value of the tort claims is not proper rebuttal expert testimony. Alternatively, fundamental fairness require that the

---

[3] The Defendants also point to their other pending motion to exclude the Trustee's witnesses, in the form of the underlying tort attorneys, because he gave no proper advance notice that he may call them as witnesses. Again, the Defendants were denied the opportunity to depose them and take other discovery because the Trustee did not make this an issue until weeks before trial, after discovery closed.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PARTIALLY EXCLUDE EXPERT TESTIMONY OF JERRY M. CHANG—Page 6

Court grant a continuance of trial and a reopening of discovery sufficient for the Defendants to take proper discovery regarding the value of the tort claims and retain their own expert to rebut Mr. Chang's opinion.

B. **MR. CHANG IS NOT QUALIFIED TO OPINE ON VALUE AND HE PRESENTS HEARSAY**

14. First, the Defendants request that the Court exclude the *Declaration of Jerry M. Chang* attached to the Response as a "sham affidavit." Under this doctrine, an affidavit cannot be used to contradict prior, sworn deposition testimony, or that is inconsistent with the deposition testimony:

> This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment. If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Seigler v. Wal-Mart Stores Texas LLC*, 30 F.4th 472, 477 (5th Cir. 2022).

15. Although this doctrine is most frequently used on summary judgment, it is also used on other evidentiary matters, including *Daubert* proceedings. *See, e.g., Zavislak v. Netflix Inc.*, 2024 WL 382448 at *17 (N.D. Cal. January 31, 2024). *See also Ayala v. Kia Motor Co.*, 633 F. Supp. 3d 547, 554-55 (D.P.R. 2022) (applying sham affidavit doctrine to expert deposition).

16. Here, Mr. Chang's declaration is inconsistent with, and flatly contradicts, his deposition testimony. Mr. Chang now states that valuing the claims was part of his valuation process. *See* Chang Declaration at ¶ 4. This contradicts his deposition testimony where he testified that this was part of his Rebuttal Report. Mr. Chang purports to ratify the methodology of the Stevenson Report. *See id*. at ¶ 5. He did not do so earlier. Mr. Chang now purports to explain that reports like the Stevenson Report are ordinarily relied on by him, parroting the language of Rule 703. That was nowhere discussed or testified to before. And, Mr. Chang now purports to

state that he also consulted an AON report. *See id*. at ¶ 5.E. This one is the most incredible one because, not only did Mr. Chang not reference any such report despite being asked multiple times, *see* DAPP 342:18-345:7, but it was counsel for the Defendants who informed him of the existence of AON reports:

> Q. Are you aware that Aon publishes an annual report of wrongful death claims in the state of Texas?
>
> A. As of what date?
>
> Q. As of every year.
>
> A. If they do, I couldn't find it.
>
> Q. You didn't try to call them and get it?
>
> A. I don't recall trying to call them.

DAPP 354:22-355:3. And, of course, no such report or analysis appears in Mr. Chang's reports where he lists the sources he consulted.

17.     Thus, the Court should strike from the consideration of the Motion Mr. Chang's declaration: he has been fully deposed, his answers are what they are, and his opinions must rise or fall based on his sworn deposition testimony and what appears in his reports.

18.     Even so, the issue is and remains that the Stevenson Report is hearsay and that Mr. Chang is seeking to be nothing but a conduit for this hearsay. As the Defendants have briefed, an expert is entitled to rely on hearsay to a degree, but only if he is an expert, he is relying on the hearsay as part of forming his opinion, and the hearsay is not merely his opinion. *See, e.g., U.S. v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971). As the Fifth Circuit has summarized:

> when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.

*Id*.

19. That is the point: Mr. Chang must still be a subject matter expert before he can rely on hearsay. Otherwise, he lacks the expertise to rely, not rely, test, question, or ratify the hearsay as *his* opinion. It remains the hearsay opinion of another:

> trial courts can screen out experts who would act as conduits for hearsay by strictly enforcing the requirement that experts display genuine "scientific, technical, or other specialized knowledge" to help the trier of fact understand the evidence or determine a fact at issue.

*Williams v. Illinois*, 132 S. Ct. 2221, 2225 (2012).

20. The 1972 comments to the Rule, when the Rule was expanded to permit an expert to consider inadmissible evidence, aptly explains the purpose:

> The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

FED. R. EVID. 703 cmt. 1972.

21. The point is simply that the physician was, is, and remains an *expert* who is capable of understanding information given to him and using that information to arrive at *his* expert opinion.

22. The Rule itself proves the Defendants' point: "If *experts* in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." FED. R. EVID. 703 (emphasis added). The field here is valuing personal injury and wrongful death claims; something that Mr. Chang honestly admits he is not an expert on. Perhaps an expert in that field could consult, and even rely, on the

Stevenson Report; Mr. Chang cannot, especially when all that he does is to repeat the numbers in the Stevenson Report.

23. Mr. Chang is an expert on valuing businesses and assets. He professes to have no expertise in valuing debt, much less personal injury and wrongful death claims. It simply defies credibility and would work a manifest mockery of the expert rules to believe that Mr. Chang could become an expert on so difficult a topic by reading one article from 2006.

24. The Trustee's attempt to provide some level of credibility to the Stevenson Report also fails:

(i) there is no indication that the authors were qualified to perform their study;

(ii) the links on additional information informing the study no longer work, thus that cannot be tested;

(iii) no information can be found on Medstat, the company that performed the study;

(iv) while the Stevenson Report appears on the HHS website, it does "not necessarily reflect the views of the Department of Health and Human Services";

(v) the report itself does not prepare the underlying analysis, but rather uses information from "(1) Texas Department of Insurance (TDI) survey; (2) TDI closed-claims analysis; (3) Aon Risk Consultants 2003; (4) Stevenson and Studdert; (5) Insurance Services Office (ISO); and (6) Aon Risk Consultants 2005," and cautions that:

> "Each of these data sources has distinct limitations and should be interpreted and/or compared with caution. Some estimates from Aon and ISO studies are approximations based on charts presented in their data. ISO estimates are three year averages for 1998-2000. The bottom line is that there is a paucity of reliable, state- and national-level data on this issue."

(vi) As for the underlying, third party data, the report cautions that:

> "These data are limited in the fact that they are based on self-report of the survey respondents,"

> "The second TDI study is based on an analysis of closed-claims. Although much more reliable, claims can take a number of years to close, potentially yielding estimates that are not as timely as possible,"

> "These estimates are based on a non-representative sample of nursing facilities that is heavily weighted to for-profit, chain facilities, potentially affecting their validity. It is also difficult to determine how some indicators in the report are calculated,"

> "These results are based on a national survey of attorneys and potentially subject to biases as well (e.g., recall bias and non-respondent bias),"

> "estimates are based on data from admitted carriers and, thus, exclude facilities that self-insure or use non-admitted carriers. In addition, Texas estimates are based on only 4.8% of the state's nursing home beds. Both of these factors raise questions about how generalizable these data are to other nursing homes."

25. All of this is simply too much. The Stevenson Report itself tells us that its data may not be accurate, or complete, or current, or without bias, or anything more than a tiny sampling. The Trustee urges that cross-examination, as opposed to exclusion, is the proper remedy. It is not. The Defendants cannot cross-examine the authors of the Stevenson Report, or the underlying data that they used. The Defendants can cross-examine Mr. Chang, but they should not have to: he is not an expert on the topic and his opinion must first be admissible, before it need be cross-examined.

26. The Defendants urge the Court to not permit this slippery slope and to not subject the Defendants, or the record of this case, to what is obviously unreliable hearsay under the guise that Mr. Chang's qualifications as an expert on another topic entitle him to form an opinion where he has no place forming one, using information that is clearly inadmissible and unreliable. Under the Trustee's view, an expert may become an expert simply by reading an article or two. If literacy is the only qualification to become an expert, then why have expert admissibility rules at all.

C. **MR. CHANG'S OPINION ON INSOLVENCY**

27. The Defendants also seek to exclude Mr. Chang's opinion of insolvency because, in his Original Reports—devoid of any valuation of the tort claims—he simply takes the tort claims at face value (or simply concludes that the Debtors were insolvent because of those claims),

something which the Defendants have demonstrated is not permitted under the law. The Trustee does not challenge, must less refute, that law. Thus, if Mr. Chang is properly excluded from opining that the tort claims have a value of $200,000.00, then *a fortiori* the Court should grant that relief.

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request that the Court grant the Motion and exclude those portions of Mr. Chang's testimony requested therein.

RESPECTFULLY SUBMITTED this 13th day of March, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    drukavina@munsch.com

**ATTORNEYS FOR THE DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 13th day of March, 2024, true and correct copies of this document were electronically served by the Court's ECF system on all parties to this Adversary Proceeding through their counsel of record, including on counsel for the Trustee.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.